# CLEARY GOTTLIEB STEEN & HAMILTON LLP

**AMERICAS**

NEW YORK
SAN FRANCISCO
SÃO PAULO
SILICON VALLEY
WASHINGTON, D.C.

**ASIA**

BEIJING
HONG KONG
SEOUL

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com


D: +1 212 225 2283
racooper@cgsh.com

**EUROPE & MIDDLE EAST**

ABU DHABI
BRUSSELS
COLOGNE
FRANKFURT
LONDON
MILAN
PARIS
ROME

November 4, 2025

<u>VIA ECF</u>

The Honorable Naomi Reice Buchwald
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

   Re:  *In re Dentsply Sirona, Inc. Securities Litigation*, No. 1:24-cv-9083 (NRB)

Dear Judge Buchwald:

  We represent Defendants Dentsply Sirona Inc. ("Dentsply" or the "Company"), Simon D. Campion, Glenn G. Coleman, Andreas G. Frank, Neeraj Gunsagar, and Erania Brackett in the above-captioned matter. We write jointly with Defendant Donald M. Casey, Jr., represented by Simpson Thacher & Bartlett LLP, and Defendant Jorge M. Gomez, represented by Levine Lee LLP (collectively, the "Defendants"), in response to Plaintiffs' letter, dated October 30, 2025, notifying the Court of the decision in *Sherman v. Abengoa, S.A.*, 2025 WL 2825369 (2d Cir. Oct. 6, 2025) ("*Abengoa*"). *See* Dkt. No. 88 (the "Letter"). *Abengoa*'s fact-specific holdings cannot help Plaintiffs survive dismissal of their Amended Complaint here.

  ***First***, far from "squarely refut[ing] Defendants' objections to the FE allegations here," *id.* at 1, *Abengoa* underscores Plaintiffs' failure to describe the FEs "with sufficient particularity" to plausibly show that they "would possess the information alleged," *Abengoa*, 2025 WL 2825369, at \*7. The *Abengoa* plaintiffs described why each FE would have firsthand access to or oversight of the conduct at issue. Those witnesses included, for example, a director of human resources who "repeatedly heard from employees . . . about accounting fraud" and a senior accounting executive with "broad oversight for accounting and financial reporting" across multiple subsidiaries, placing them squarely within the chain of information concerning the company's allegedly fraudulent accounting practices. *Id.*

  By contrast, Plaintiffs here allege no specific facts showing that any FE actually possessed, received, or was situated to receive the information that could support their sweeping assertions. As Defendants have made clear in their motion to dismiss briefing, even where Plaintiffs describe the FEs' roles in the Amended Complaint, they fail to allege facts indicating that those positions

The Honorable Naomi Reice Buchwald, p. 2

provided the requisite personal knowledge to substantiate the statements attributed to them, or that any FE communicated information to Defendants in a way that could plausibly give rise to scienter. Dkt. No. 71 ("Mot.") at 26–28; Dkt. No. 84 ("Rep.") at 3–6. For example, Plaintiffs continue to reference FE-2's role in designing software systems and "interacting" with Gunsagar, Letter at 2, but fail to offer a plausible basis for FE-2's supposed company-wide insight into medical oversight or reporting practices or anything to show what Gunsagar allegedly knew or when. Unlike in *Abengoa*, Plaintiffs do not allege sufficient facts demonstrating that the FEs whom they rely on were positioned to perceive, much less confirm, an alleged company-wide scheme. *See Abengoa*, 2025 WL 2825369, at *7.

Moreover, several of the *Abengoa* witnesses were corroborated by independent findings in multiple audits and offered detailed, internally consistent observations of the accounting-fraud scheme—evidence that collectively supported the court's conclusion that the misconduct was "widespread and systemic." *Id.* at *10. Plaintiffs' assertion that their FEs are "corroborated by each other, by Dentsply's own retrospective MAUDE filings, and by the reports of investigative journalists" is thin by comparison. Letter at 2. For example, the supposed "reports of investigative journalists" seem to consist of a single Capitol Forum article quoting unnamed "insiders" or "employees," *see* Dkt. No. 51 (Am. Compl.) ¶¶ 103, 177–79, which bears no resemblance to the independent, formal audit by KPMG that corroborated the alleged fraud in *Abengoa*, *see Abengoa*, 2025 WL 2825369, at *9.

**Second**, *Abengoa* includes only a passing reference to executives' motive to "maximize their own bonuses," without substantive analysis, before proceeding to serious and direct allegations of misconduct: a subsidiary CFO instructing employees to "'shut . . . up and just sign' [financial] reports" and a KPMG report concluding that Abengoa's executive chairman and other senior officers had orchestrated a deliberate accounting fraud. *Id.* Plaintiffs here offer nothing comparable, and *Abengoa* therefore adds nothing on the scienter issue in this case. And Plaintiffs do not explain how *Abengoa* supposedly helps them to impute alleged scienter of Byte employees to Dentsply. *See* Letter at 2.

**Third**, *Abengoa* makes clear that using allegations from a different case is a "case-specific inquiry that will turn on the nature and substance of the allegations made in the other proceedings." *Abengoa*, 2025 WL 2825369, at *1. Although the allegations from the unrelated *San Antonio* case that Plaintiffs hope to use here were "sustained by Judge Subramanian under the PSLRA pleading standard," Letter at 2, Plaintiffs fail to allege any facts linking channel stuffing allegations from that case to the Byte business at issue here. *See* Mot. at 25–26. And *Abengoa* cannot change the fact that the *San Antonio* decision was merely an assessment of the untested pleadings in that other complaint. *See* Rep. at 8–9. The *Abengoa* court allowed allegations from another proceeding to be used because they were independently corroborated. *Abengoa,* 2025 WL 2825369, at *8. But here, Plaintiffs can state only that the allegations in *San Antonio* were "well supported by Dentsply's own admissions," *see* Dkt. No. 79 at 67; Letter at 3, and those so-called admissions found that there was "no evidence of intentional wrongdoing or fraud" (directly contradicting the *San Antonio* plaintiffs' claims of a channel-stuffing fraud), *see* Dkt. No. 78-1 at 4.

Relatedly, Plaintiffs' critiques of Casey's characterization of the *San Antonio* allegations as "conclusory" and "unadjudicated," and thus unreliable under *Abengoa*, are unavailing. The Second Circuit explicitly affirmed its precedent in which it rejected "pleadings that merely relied

The Honorable Naomi Reice Buchwald, p. 3

on conclusory allegations [] in other proceedings." *Abengoa*, 2025 WL 2825369, at *8. Whether allegations from another proceeding are "conclusory" or have been adjudicated or reliably verified—*e.g.*, by the findings of impartial outside experts or a law enforcement agency investigation—are key factors in the "case-specific inquiry" *Abengoa* sets forth. *See id.* Indeed, that the at-issue allegations in *Abengoa* were derived from the final adjudication of a regulatory investigation and the report of that investigation's findings was a key factor in the *Abengoa* court in concluding the allegations could be relied on. *See id.* at *8–9 (*Abengoa* allegations verified by "auditing firm expert report, ICAC's ['Spain's top financial accounting regulator'] ***resolution of its investigation***, and a forensic report from two financial-consulting firms" and thus could be relied on as non-conclusory) (emphasis added); *id* at *3 (noting reliance on ICAC report of concluded investigation). Here, where there has been no such verification or any form of adjudication of the fraud allegations in the *San Antonio* case, the allegations fall on the conclusory side of the line and *Abengoa* bars the use of those allegations against Defendants in this unrelated litigation. Indeed, here the SEC "has concluded its investigation of the Company commenced in May 2022" and "does not intend to recommend any enforcement action against the Company." Exhibit 1.

Respectfully submitted,

*/s/ Roger A. Cooper*
Roger A. Cooper

cc:   Counsel of Record (via ECF)