**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE DENTSPLY SIRONA, INC. SECURITIES LITIGATION, | No. 24-cv-9083 (NRB)<br><br>**STIPULATION AND ~~[PROPOSED]~~ ORDER REGARDING JOINT ELECTRONIC DISCOVERY SUBMISSION** |

One or more of the parties to this litigation have indicated that they believe that relevant information may exist or be stored in electronic format, and that this content is potentially responsive to current or anticipated discovery requests. This Joint Submission and ~~[Proposed]~~ Order (and any subsequent ones) shall be the governing document(s) by which the parties and the Court manage the electronic discovery process in this action. The parties and the Court recognize that this Joint Electronic Discovery Submission (the "ESI Protocol") and ~~[Proposed]~~ Order is based on facts and circumstances as they are currently known to each party, that the electronic discovery process is iterative, and that additions and modifications to this Submission may become necessary as more information becomes known to the parties. ORDERED that the following restrictions and procedures shall apply to the information and documents exchanged by the parties in connection with the pre-trial phase of this action:

**1. Brief Joint Statement Describing the Action:**

Proposed securities class action against Dentsply Sirona and its former executives pertaining to Byte for the period January 4, 2021 to February 26, 2025. Defendants deny the allegations.

**a. Estimated amount of Plaintiff(s)' Claims:**

More than $50,000,000

**b. Estimated amount of Defendant(s)' Counterclaim/Cross-Claims:**

At this time, Defendants do not assert any counterclaims or cross-claims.

**2. Competence.**

Counsel certify that they are sufficiently knowledgeable in matters relating to their clients' technological systems to discuss competently issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.

**3. Meet and Confer**.

Pursuant to Fed. R. Civ. P. 26(f), counsel are required to meet and confer regarding certain matters relating to electronic discovery before the Initial Pretrial Conference (the Rule 16 Conference). Counsel hereby certify that they have met and conferred to discuss these issues.

**Date(s) of parties' meet-and-confer conference(s)**: January 27, 2026[1]

**4. Unresolved Issues**: After the meet-and-confer conference(s) taking place on the aforementioned date(s), the following issues remain outstanding:

The Parties will meet and confer on Search and Review and Source(s) of Production after responding to Requests for Production.

As set forth below, to date, the parties have addressed the following issues:

**5. Preservation**.

**a.** The Parties acknowledge their respective obligations to preserve potentially relevant electronically stored information in accordance with applicable law and the Federal Rules of Civil Procedure. Each Party shall take reasonable steps to identify and preserve electronically stored information that may be relevant to this litigation. The Parties reserve all rights and objections with respect to the scope and manner of preservation, and nothing in this section shall be construed to expand or limit any Party's preservation obligations under applicable law.

There is no agreement to reduce any party's preservation obligations.

**b.** State the extent to which the parties have disclosed or have agreed to disclose the dates, contents, and/or recipients of "litigation hold" communications

There is no agreement to disclose this.

**c.** The parties anticipate the need for judicial intervention regarding the following issues concerning the duty to preserve, the scope, or the method(s) of preserving electronically stored information:

N/A.

**6. Search and Review.**

**a.** The parties have discussed methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used. Some of the approaches that may be considered

[1] This meet-and-confer conference took place with Defendants' prior counsel.

include: the use and exchange of keyword search lists, “hit reports” ; concept search; machine learning, or other advanced analytical tools; limitations on the fields or file types to be searched; date restrictions; limitations on whether back-up, archival, legacy, or deleted electronically stored information will be searched; etc. Consistent with Sedona Conference Principal 6, the Parties agree and acknowledge that a producing party is best positioned to select the methods and means of its own document collections, reviews, and productions. This provision does not limit any Party’s obligations under Sedona Principles 3, 4, 11, and 12 to provide sufficient non-privileged information regarding the scope, sources, search and retrieval parameters, review methods, production format, metadata, and limits of its ESI preservation, collection, review, and production efforts to permit informed meet-and-confer discussions. The requesting Party may provide good-faith input regarding those issues, including custodians, data sources, search terms or other search methodologies, metadata fields, and production formats, and the producing Party shall consider that input in good faith. . To the extent the parties have reached agreement as to search and review methods, provide details below:

**(i)** **Sources, Search Methods, and Timing.** The Parties shall continue to meet and confer in good faith regarding: (a) sources from which documents and ESI will be collected for review and production, including but not limited to, emails, attachments, database documents, shared files, locally-saved documents, mobile devices, photos, instant messaging platforms, social media, and source code; (b) search terms to be applied; and (c) timeframes for collection and review of documents and ESI. These discussions have already started and should continue, including promptly after service of new requests for production, and responses and objections to requests for production, and should continue as necessary to address issues that arise in the course of discovery.

**(ii)** **De-Duplication.** The Parties shall use MD5 or SHA-1 hash values to identify duplicate ESI and globally de-duplicate ESI, provided that such de-duplication does not remove any substantive information, including the identities of authors, recipients, and dates sent. In the case of emails, the hash value shall be calculated on the concatenated value of the following fields: to, from, cc, bcc, date sent, email subject, and full body of the email. In addition to preserving the author and recipient data within the produced image of each produced email thread, the metadata provided by the Parties for the produced version of each document withheld as a duplicate, shall include an “All Custodians” field, identifying all custodians who possessed exact copies of the document. The Parties will not de-duplicate loose electronic documents against email attachments. The Parties will not treat a document containing handwritten notes,

highlighting, or any other markings as a duplicate of a non-marked or annotated version of the same document.

**(iii)** **Technologies.** To the extent a Party uses a technology other than search terms (including, for instance, predictive coding) when culling documents from its productions in response to a discovery request, that Party shall disclose its use of that technology, the name of the review tool, a reasonable description of the methods it will use to exclude documents from production and validate the results (including a description of the richness, recall and precision rates). The Parties do not consent to, and reserve the right to object to, the use of such technology.

**b.** The parties anticipate the need for judicial intervention regarding the following issues concerning the search and review of electronically stored information:

N/A

**7. Production**

**a.** **Source(s) of Electronically Stored Information**. The parties anticipate that discovery may occur from one or more of the following potential source(s) of electronically stored information: email, word processing documents, spreadsheets, presentations, databases, instant messages, web sites, blogs, social media, ephemeral data.

Nothing in this section waives any Party's objections, including relevance, responsiveness, proportionality, burden, or accessibility.

**b.** **Limitations on Production**. The parties have discussed factors relating to the scope of production, including but not limited to: (i) number of custodians; (ii) identity of custodians; (iii) date ranges for which potentially relevant data will be drawn; (iv) locations of data; (v) timing of productions (including phased discovery or rolling productions); and (vi) electronically stored information in the custody or control of non-parties. To the extent the parties have reached agreements related to any of these factors, describe below:

The Parties agree to rolling productions. The Parties continue to meet and confer regarding the number of custodians, identity of custodians, and date ranges for which potentially relevant data will be drawn.

c. **Form(s) of Production**:

**(1)** The parties have readied the following agreements regarding the form(s) of production as described below.

**(2)** The parties have specified any exceptions to the form(s) of production indicated as described below.

**(3)** At this time, the parties do not anticipate the need for judicial intervention concerning the forms of production.

**(i)** **Form of Production.** Except as otherwise provided in this paragraph, production of all ESI shall include single-page Bates-stamped TIFF images, accompanied by a load file with fielded data, a .txt file containing extracted text or OCR Text, and an image load file for the TIFFs. The Parties will produce non-redacted Microsoft Access files, Excel files, .CSV files, other similar databases and spreadsheet files, video files, audio recordings, and any other media, data, or other files possessed by a Party producing discoverable information ("Producing Party") in native form, with one-page placeholder TIFF images. Redacted ESI, including Microsoft Access files, Excel files, .CSV files, other similar databases and spreadsheet files, video files, audio recordings, and any other media, data, or other files possessed by the Producing Party in native form, shall be produced in native form with any redactions applied to that native form, and produced as TIFF images, accompanied by a load file with fielded data, a .txt file containing OCR'ed text, and an image load file for the TIFFs. Any portions of audio files not claimed to be privileged or otherwise exempt from production in their entirety shall be produced in their native format. Microsoft Word documents will be produced in a manner that shows tracked changes and comments, and the Parties will meet and confer on the production of particular Microsoft Word documents in native form as requested by the Receiving Party in good faith. The Parties will meet and confer to discuss a suitable production format for any document types not addressed herein.

**(ii)** **Hard Copy Documents.** Hard copy documents should be produced in the form of single-page, Group IV TIFFs at 300 dpi. Each TIFF image should be named as its corresponding Bates number with a ".tif" extension. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Bates numbers, confidentiality designations, and redactions should be burned into the TIFF image files. TIFF image files should be provided in a self-identified "Images" folder. The documents should be logically unitized (i.e., distinct documents shall not be merged into a single record, and single documents shall not be split into

multiple records) and be produced in the order in which they are kept in the usual course of business. If an original document contains color that is necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI, color JPG images.

**(iii)** **OCR Text Files.** Optical Character Recognition ("OCR") text files shall be provided as a single text file for each document, not one text file per page. Each file should be named with the beginning Bates number that is assigned to its corresponding document, followed by .TXT. OCR text files should be provided in a self-identified "Text" folder. To the extent a document is redacted, OCR text files for such a document shall not contain text for redacted portions. The settings to achieve the highest quality text, such as "auto-deskewing" and "auto-rotation," should be turned on during the OCR process.

**(iv)** **Database Load Files/Cross-Reference Files.** The documents shall be provided with Concordance-compatible image and data load files (i.e., .OPT and .DAT files) using standard Concordance delimiters. The standard Concordance data load file delimiters are defined as using ASCII 094 or caret for a field separator, ASCII 124 or pipe for a text qualifier, and ASCII 013 or carriage return for a new line. The standard Concordance image load file shall provide the image file path for each Bates numbered page in the following "Bates,Volume,PATH_to_image,Document Break,Folder Break,Box Break,Total_Pages" format:

ABC00000001,OLS,D:\DatabaseName\Images\001\ABC00000001.TIF,Y,,,
ABC00000002,OLS,D:\DatabaseName\Images\001\ABC00000002.TIF,,,,
ABC00000003,OLS,D:\DatabaseName\Images\001\ABC00000003.TIF,,,,
ABC00000004,OLS,D:\DatabaseName\Images\001\ABC00000004.TIF,Y,,,

Concordance-compatible image and data load files (i.e., .OPT and .DAT files) shall be provided in a self-identified "Data" folder.

**(v)** **Coding Fields.** The documents shall be produced with at least the following searchable information in accompanying delimited data files: (1) BegBates; (2) EndBates; (3) BegAttach; (4) EndAttach; (5) PgCount; (6) Volume; and (7) Custodian. Custodians shall be identified using the convention "Last name, First name." Entity/departmental custodians should be identified with the entity and/or department's name. A Producing Party shall use a uniform description of a particular custodian across productions.

**(vi)** **Bates Numbering.** Each TIFF image shall be assigned a Bates number that: (l) is unique across the entire document production; (2) maintains a constant length across the entire production (i.e., padded

to the same number of characters); (3) contains no special characters or embedded spaces; and (4) is sequential within a given document.

**(vii)** **Document Image Format.** Except as otherwise provided, all images must be produced as single-page, Group IV, black & white 300 DPI TIFFs. A Party may request replacement color images for documents originally produced in black and white if the originally produced images are impacted by the lack of color. The Requesting Party shall make the request by individual Bates number(s) and shall limit requests made pursuant to this section to a reasonable number of documents. The Producing Party shall act with good faith and not unreasonably refuse to provide replacement color images. The Parties agree to meet and confer on such requests if there is disagreement.

**(viii)** **E-Mail Attachments.** E-mail and attachments will be produced according to the specifications in this paragraph (c) ("Form(s) of Production"). If the Producing Party redacts any part of the e-mail before producing it, OCR text may be provided in place of extracted text. E-mail attachments shall be processed as though they were separate documents, and the Data Load File shall include a field in which the Producing Party shall identify, for each e-mail, the Bates range of any attachments.

**(ix)** **E-mail Threading.** The use of email threading is permitted. Where multiple email messages are part of a single chain or "thread," a party may produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including identical attachments and including identical senders and recipients, within the Last In Time Email. Email messages for which the parent document and all attachments are not contained in the Last In Time Email must be produced; in other words, any emails containing attachments and/or which include additional participants, including bcc'd recipients, shall be considered Last In Time Emails that must be produced. The Producing Party will produce a reasonable number of lesser inclusive copies of a Last in Time Email or other earlier chains of emails otherwise excluded by email thread suppression upon request. In addition, where the most-inclusive document does not include or otherwise show headers from intervening emails within the thread, the Producing Party shall separately produce each intervening email as an individual document, together with its corresponding headers and related metadata. For the avoidance of doubt, no party is obligated to create metadata that is not otherwise available for most-inclusive, threaded emails. If an email thread is withheld from production because of privilege or any other

protection, only one entry for that thread group shall be included in the Producing Party's privilege log.

**(x)** **Text Messages and Instant Messages.** To the extent Text Messages (including SMS, MMS, iMessages, and other instant messages/chats, regardless of the application through which they were sent, including Slack, Teams, WhatsApp, Signal, Telegram, WeChat, etc.) were sent or received during the agreed-upon or court-ordered relevant period by agreed-upon or court-ordered custodians and appear reasonably likely to be responsive, the Producing Party shall review such messages for responsiveness, provided that doing so is reasonable and proportionate. To the extent an agreed-upon or court-ordered custodian is a current employee of a Producing Party or an Individual Defendant, a Producing Party shall not determine that Text Messages are not reasonably likely to be responsive without at minimum directly communicating and inquiring with such custodian. For the avoidance of doubt, nothing herein shall be construed as a waiver of the attorney-client privilege and/or attorney work product protection and reference to such communications or inquiries in this agreement shall in no way result in waiver of such privilege and protection. Text Messages shall be produced in a searchable format that preserves the presentational features of the original message, such as emojis, images, video files, animations, and the like, and accompanying metadata, and shall be produced with its relevant conversation thread unitized by 24-hour conversation day, along with any relevant contextual messages a Producing Party reasonably identifies. To the extent a Requesting Party reasonably believes additional contextual messages are necessary to understand a particular responsive message, the requesting Party shall identify the responsive message by Bates number, and Parties will meet and confer regarding what, if any, contextual messages exist for possible production. To the extent ephemeral messaging tools or applications (e.g., Snap, Signal, etc.) were utilized by a producing Party or its employees to communicate regarding business matters, the Parties will meet and confer regarding the availability of such data for collection and production, and the appropriate production format.

**(xi)** **Native Files.** Native files will be produced in a separate folder on the production media. The Data Load File shall contain a field that identifies the file path of the native file corresponding to each document. For Microsoft Access files, Excel files, .CSV files, other similar databases and spreadsheet files, presentations (e.g., PowerPoints), video files, audio recordings, and any other media, data, or other files possessed by the Producing Party in native form, the TIFF image shall be a one-page placeholder that shows (a) the name of the native file, (b) a unique Bates number, and (c) if

applicable, a confidentiality designation. A Party requesting discoverable information ("Requesting Party") shall exercise good faith efforts to ensure that any copies or print-outs of natively produced documents include a confidentiality legend, or cover page with a confidentiality legend, that matches the confidentiality designation the Producing Party applied to the document.

**(xii)** **Embedded Files.** Image files and other files embedded in emails should be produced as part of the emails. Bates range for these files shall be identified in the same manner as the Bates range of an e-mail attachment to the parent document.

**(xiii)** **Text Files.** For each document, a single text file shall be provided along with the image files and the metadata. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document requires redaction, is an image file, or is any other native electronic file that does not contain text to extract (e.g., non-searchable PDFs). In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text. Extracted text shall be provided in UTF-8 text format.

**(xiv)** **Redactions.** In situations where redaction of information is required, such redactions must be made in a way that ensures the integrity of the remaining text is preserved for OCR (e.g., redactions must not obscure non-redacted text). Any redactions must be clearly visible on the face of the produced document (e.g., the Parties should not use white boxes to make redactions on documents with a white background) and OCR searchable (e.g., labeled "Redacted").

**(xv)** **Document Unitization.** For files produced as TIFF images, each page of a document shall be electronically saved as an image file. If a document consists of more than one page, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image files. The Parties shall produce a unitization file ("load file") for all produced documents in accordance with the following formatting:

**OCR and Extracted Text Files (.TXT Files):**

- Single text file per document containing all of the document's pages
- Filenames should be of the form: <Bates num>.txt Where <Bates num> is the BATES number of the first page in the document.
- Text must be encoded in UTF-8.

**Image Files:**

- Single page per image.
- TIFF is Group IV compression, 300 dpi unless color or grayscale image is necessary, then .JPG would be acceptable.
- Filenames should be of the form: "<Bates num>.<ext>," where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif).

**Index Files:**

- "Concordance Default" delimited text file utilizing the following characters:
    - The "comma" delimiter is "¶" (020).
    - The "quote" delimiter is "þ" (254).
    - The "new line" delimiter is "®" (174).
    - First line must contain the column/field names (set forth in Appendix A).
    - Every row must have the same number of columns/fields (empty values are acceptable).
    - Text must be encoded in UTF-8.

**(xvi)** **Exception Files.** The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files").

The Parties agree to meet and confer to discuss all unitization file/load file specifications, if needed.

**(xvii)** **Bates Numbering and Other Unique Identifiers.** For files produced as TIFF images, each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically burned onto the TIFF image in such a manner that information from the source document is not obliterated, concealed, or interfered with. There shall be no other legend or stamp placed on the document image unless a document (i) qualifies for confidential treatment pursuant to a protective order issued by the Court in the Action, or (ii) has been redacted in accordance with applicable law or order (including any protective order) entered by this Court or any other court. In the case of Confidential Information, as defined in any applicable protective order, or materials redacted in accordance with applicable law or other order (including any protective order) entered by this Court or another court, a designation may be burned onto the document's image at a location that does not obliterate or obscure any non-redacted information from the source document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will

so note in a cover letter or production log accompanying the production.

**(xviii) Production Media.** Documents shall be produced via FTP (the "Production Media"). The Parties shall accompany all document productions with a letter identifying the production date and the Bates number range of the materials contained on such Production Media. The Production Media (which includes electronic folders produced via FTP) should be labeled with:

- the Producing Party's name;
- the case name and number;
- the production volume; and
- the Bates number range.

**(xix) Metadata.** With each produced ESI file, the Parties must produce each of the applicable metadata fields described in Appendix A (to the extent available and technically achievable). The metadata must be produced in the following format: (1) an OpticonTM or IPRO® "cross reference file" which associates each Bates number with its corresponding single-page TIFF image file and (2) a Data Load File containing Concordance® delimited text that will populate fields in a searchable flat database environment, containing one line for each document and each of the applicable fields as described in Appendix A. Nothing in this stipulation requires a Party to manually populate a metadata field in Appendix A (other than Custodian and MD5Hash) if such fields cannot be extracted from a document, provided that the Parties agree to comply with reasonable requests for metadata that exists but cannot be extracted from a document. For the avoidance of doubt, nothing in this ESI Protocol shall act as a waiver of any objections that may exist to the production of such data.

**(xx) Attachments.** Attachments must be mapped to their parent by the Attachment Range. If a parent email or one of its attachments is produced, all members of its family, except for privileged documents, and associated text and metadata, must be produced.

**(xxi) Structured or Aggregated Data – Databases, Enterprise Systems, and Third-Party Cloud Systems.** Consistent with the Parties' obligations under the Federal Rules of Civil Procedure, to the extent called for by any discovery request, the Producing Party(ies) will promptly alert the Requesting Party(ies) and meet and confer to address the identification, production, and production format of any responsive data contained in a database, other structured or aggregated data source, or third-party cloud-based storage system, including in connection with any trading, risk

analysis, or similar platform. Prior to any such meet and confer, the Producing Party(ies) will provide sufficient information to enable the Requesting Party(ies) to evaluate the Producing Party's proposed method and format of production. In the event that the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

**(xxii)** **Mobile and Handheld Device Documents and Data.** To the extent such sources are likely to contain responsive ESI the Parties agree to disclose: (a) the mobile phone number(s) used by any Document Custodian, (b) the Document Custodian's use of messaging applications (e.g., SnapChat, WhatsApp, Facebook Messenger), and (c) any accessibility issues, including accessibility issues arising from any password, passcode or encryption protections. The Parties agree to cooperate in good faith in identifying and collecting responsive ESI from mobile, handheld devices and messaging applications, including to resolve any accessibility issues.

**(xxiii)** **Hidden Data.** The Parties shall process productions in a manner to ensure that all information, to the extent it exists in a document being produced in TIFF image format, is visible, including:

- auto date (code information should be provided in place of date);
- track changes (the TIFF images should show all track changes in markup form);
- hidden columns or rows (the Producing Party should note that hidden columns and/or rows exist in native excel files and produce the hidden rows and columns);
- hidden text or worksheets;
- hidden slides or speaker notes in native PowerPoint presentations; and
- comments (these should be visible on the TIFF images of the documents).

**(xxiv)** **Encryption.** To maximize the security of information in transit, any media on which documents are produced may be encrypted by the Producing Party, and the Producing Party may transmit the encryption key or password to the Receiving Party(ies) under separate cover.

**d.** **Inadvertent Production / Claw-Back Agreements**. Pursuant to Fed R. Civ. Proc. 26(b)(5) and F.R.E. 502(e), the parties have agreed to the following concerning the inadvertent production of privileged documents (e.g. "quick-peek" agreements, on-site

examinations, non-waiver agreements or orders pursuant to F.R.E. 502(d), etc.):

See Protective Order.

**(1)** The terms of the Parties' 502(d) Order are contained in the Parties' Protective Order.

**e.** **Cost of Production**. The parties have analyzed their client's data repositories and have estimated the costs associated with the production of electronically stored information. The factors and components underlying these costs are estimated as follows:

**(1)** Costs:

The Parties believe it is too early to estimate the costs of production.

**(2)** Cost Allocation. The parties have considered cost-shifting or cost-sharing and have reached the following agreements, if any:

There is no agreement concerning cost-shifting or cost-sharing. Unless otherwise agreed by the Parties or ordered by the Court, each Party shall bear its own costs of collecting, processing, reviewing, and producing ESI in this Action. Nothing in this section shall preclude any Party from seeking cost-shifting or cost allocation from the Court pursuant to the Federal Rules of Civil Procedure, and the Parties reserve all rights and objections with respect to any such application.

**(3)** Cost Savings. The parties have considered cost-saving measures, such as the use of a common electronic discovery vendor or a shared document repository, and have reached the following agreements, if any:

The Parties shall meet and confer in good faith regarding cost-saving measures, including but not limited to: (i) coordination of processing and production workflows to reduce duplication of effort; and (ii) phasing of discovery to prioritize the most relevant custodians and data sources before expanding to additional sources.

**f.** The parties anticipate the need for judicial intervention regarding the following issues concerning the production of electronically stored information:

N/A

**8.** **Other Issues**:

**Scope.** Nothing in this ESI Protocol is intended to be an exhaustive list of discovery obligations or rights of a Producing Party or a Requesting Party, or any other Party or nonparty. This ESI Protocol does not address or resolve any objections to the scope of the Parties' respective discovery

requests. This ESI Protocol also does not govern the reproduction by the Parties of discoverable information obtained from nonparties prior to or during discovery in the Action. Such information may be reproduced by the Parties as it was produced to the Parties.

**Non-Party Documents.** A Party that issues a subpoena to a non-party ("Issuing Party") is responsible for producing to all other Parties any documents obtained pursuant to that subpoena in the form in which they were produced to the Issuing Party. The Issuing Party shall make such production to all other Parties immediately after receipt and no later than seven (7) business days after the receipt by the Issuing Party. Nothing in this ESI Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties to object to a subpoena.

**Limitation and Non-Waiver.** The Parties and their attorneys do not intend by agreeing to this ESI Protocol to waive their rights to any protection or privilege, including the attorney-client privilege and work product doctrine, or their rights to object to any discovery requests.

**Modification.** This ESI Protocol may be modified by mutual agreement and consent of the Parties without Court involvement or by the Court for good cause shown.

* * *

The preceding constitutes the agreement(s) reached, and disputes existing, (if any) between the parties to certain matters concerning electronic discovery as of this date. To the extent additional agreements are reached, modifications are necessary, or disputes are identified, they will be outlined in subsequent submissions or agreements and promptly presented to the Court.

Dated: July 14, 2026

*<u>/s/ Michael D. Blatchley</u>*
Salvatore J. Graziano
Hannah Ross
Michael D. Blatchley
Scott R. Foglietta
Shane D. Avidan
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
hannah@blbglaw.com
michaelb@blbglaw.com
scott.foglietta@blbglaw.com
shane.avidan@blbglaw.com

*<u>/s/ William J. Foley</u>**
William J. Foley
Rebecca Greene
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019
Telephone: (212) 506-5000
wfoley@orrick.com
rgreene@orrick.com

James N. Kramer (admitted *pro hac vice*)
Ariel B. Winawer (admitted *pro hac vice*)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
405 Howard Street
San Francisco, CA 94105
Telephone:(415) 773-5700
jkramer@orrick.com

*Counsel for Lead Plaintiffs HANSAINVEST Hanseatische Investment- Gesellschaft mit beschränkter Haftung and City of Miami General Employees' & Sanitation Employees' Retirement Trust and Lead Counsel for the Class*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**
Robert D. Klausner
Stuart A. Kaufman
7080 Northwest 4th Street
Plantation, FL 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for City of Miami General Employees' & Sanitation Employees' Retirement Trust*

*All electronic signatures ("/s/") are signed with consent of counsel pursuant to Rule 8.5 of this Court's Electronic Case Filing Rules &, as of February 2, 2026.

awinawer@orrick.com

*Counsel for Defendants Dentsply Sirona Inc., Erania S. Brackett, Simon D. Campion, Glenn G. Coleman, Andreas G. Frank, and Neeraj Gunsagar*

*/s/ Meredith D. Karp**
Bryce L. Friedman
Craig S. Waldman
Meredith D. Karp
Isabel Mattson
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, New York 10007
Telephone: 212-455-2000
Facsimile: (212) 455-2502
bfriedman@stblaw.com
cwaldman@stblaw.com
meredith.karp@stblaw.com
isabel.mattson@stblaw.com

*Counsel for Defendant Ann M. Casey, as the Personal Representative for the Estate of Donald M. Casey, Jr.*

Date: July 16, 2026

**SO ORDERED.**



# **Appendix A**

| **Field Name** | **Sample Data** | **Description** |
|---|---|---|
| BEGBATES | EDC0000001 | First Bates number of native file document/email |
| ENDBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| BEGATTACH | EDC0000002 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| ALL CUSTODIAN | Smith, John; Doe, Jane | Contains all the custodians that had the document in their data |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document **semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to<br>separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |

| Field Name | Sample Data | Description |
|---|---|---|
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| DATE_RECEIVED | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty) |
| TIME_RECEIVED | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty) |
| TIME_ZONE | GMT | The time zone in which the emails<br>were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |
| NATIVE LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty)<br>Native: Last Author of the document |

| Field Name | Sample Data | Description |
|---|---|---|
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty)<br>Native: Time the document was created including time zone |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last modified including the time zone |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last accessed including the time zone |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| HIDDEN_CONTENT | Excel Comments; Excel Hidden Columns; Excel Hidden Worksheets | Indicates whether hidden content is present in Microsoft Excel or PowerPoint files |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: Original location of the file. |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |

| **Field Name** | **Sample Data** | **Description** |
|---|---|---|
| REDACTED | Yes; No | Indicates whether the document contains redactions. |
| HEADER | Return-Path:<br><example_from@dc.edu> X-SpamCatcher-Score:1[X]<br>Received:from[136.167.40.119]<br>(HELO dc.edu)<br>by fe3.dc.edu (CommuniGate Pro SMTP4.1.8)<br>with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; Mon, 23 Aug 2004 11:40:10 - 0400<br>Message-ID:<br><4129F3CA.2020509@dc.edu><br>Date: Mon, 23 Aug 2005 11:40:36 -400<br>From: Taylor Evans<br><example_from@dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1) Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-Version:1.0<br>To: Jon Smith<br><example_to@mail.dc.edu><br>Subject:Business Development Meeting<br>Content-Type:<br>text/plain;charset=us-ascii;<br>format=flowed<br>Content-Transfer-Encoding:7bit | Email: The email header information<br>Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| EXTRACTED TEXT PATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |
| TEXT/CHAT TYPE | SMS, MMS, Teams, Slack | The type of text or chat |
| PARTICIPANTS | John Smith, 000-000-0000 | The Participants of the text/chat conversation, represented by either their phone number, name, or both |